**STATE of Missouri, Respondent,**

v.

**Larry HARRIS, a/k/a Clarence Campbell, Jr., Appellant.**

**No. WD 31035.**

Missouri Court of Appeals,
Western District.

July 8, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 4, 1980.

Application to Transfer Denied
Sept. 9, 1980.

Gerald Kiser, Public Defender, 7th Judicial Circuit, Liberty, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

MANFORD, Judge.

This is a direct appeal from a jury conviction for robbery, first degree. The trial court affixed punishment at 10 years in the Department of Corrections. A timely motion for new trial was filed, overruled and this appeal followed. The judgment is affirmed.

Appellant presents three points of alleged error. His first point alleges that the trial court erred in its refusal to grant his motion for acquittal at the close of the state's evidence because the evidence was insufficient to sustain the verdict of the jury. The second point alleges the trial court erred in giving the verdict directing instruction no. 5 (MAI–CR 2.12, 7.60) because the evidence was insufficient to support the instruction. The third point alleges the trial court erred in failing to give a proper MAI–CR 2.14 instruction in conjunction with state's instruction no. 6 (MAI–CR 2.10).

The first two points raised by appellant are postured upon the same premise. The contention is that of insufficient evidence to sustain the finding of the jury. Obviously, if appellant's contention is correct on the first point, it must follow that the evidence is insufficient to support the challenged instruction. These first two points are taken up, discussed and disposed of together.

Because the sufficiency of the evidence is the challenge of appellant, it is necessary to give a recitation of the evidence. The only evidence upon the record was submitted by the state, as the appellant elected to offer no evidence. This court, in being asked by appellant to determine the sufficiency of the evidence, will accept as true all of the evidence on the record tending to support the jury's finding of appellant's guilt, together with all inferences which can be reasonably drawn therefrom, and will disregard contrary evidence and inferences, see *State v. Morgan*, 592 S.W.2d 796 (Mo.banc 1980) and *State v. Gant*, 586 S.W.2d 755 (Mo.App.1979). This court cannot weigh the evidence or substitute its assessment of the credibility of the witnesses for that of the jury, see *State v. Denmon*, 570 S.W.2d 326 (Mo.App.1978) and *State v. Roesel*, 574 S.W.2d 944 (Mo.App.1978). The charge to this court is the determination of whether or not there is substantial evidence from which reasonable persons could have found the accused guilty, see *State v. Rollie*, 585 S.W.2d 78 (Mo.App.1979).

At approximately 2:30 a. m. on December 12, 1978, appellant entered the 7–11 Store at 400 N.E. 32nd Street in Kansas City, Clay County, Missouri. There was one clerk on duty. (The evidence was undisputed that the clerk was an employee of the store and in charge of the premises). Appellant purchased some milk and cereal. Some 2–5 minutes after appellant's entry and while he was still in the store, two male customers entered. One of them asked the clerk for change for a quarter. At this point, appellant neither engaged the others in conversation nor did he acknowledge the other two in any manner. Likewise, the other two men did not appear to acknowledge appellant.

As the clerk was ringing up appellant's purchases, one of the other two men asked the clerk if something was wrong with the pinball machine. The clerk advised the man that by law she was required to shut off the machine at 1:30 a. m. Appellant paid for the milk and cereal and departed the store.

At this point, the other men decided they wanted to purchase a canned soft drink. These two paid for the soft drink, and they asked for a package of cigarettes. The precise brand and type of cigarettes was "Kool Filters". The clerk secured the cigarettes and as she began to "ring up" their purchase, one of these two men went around the counter with a gun and, while pointing the gun at the clerk, ordered her to open the two cash registers. The clerk opened the registers and was then ordered to lie on the floor. The clerk complied and as the two departed, they took a purse belonging to the clerk, one of the men kicked the clerk on the left side of the head and ordered the clerk not to phone the police for ten minutes.

The clerk testified she was placed in fear for her safety and that the men took the money without her permission.

The two men departed on foot. The clerk testified she had also observed appellant as he departed, that he was on foot and walking west on 32nd Street toward Burlington Avenue. The clerk testified that she never observed any of the three men in any type of vehicle and that there were no vehicles in the store parking area (except her own) at any time during the course of events.

Some fourteen minutes following appellant's entry into the store, a North Kansas City police officer received a radio call concerning a possible robbery of the 7–11 Store. This officer was in his patrol car at 20th and Buchanan when he received the call. He drove his patrol vehicle toward Burlington Avenue, since that direction was the shortest route to the store, and in his judgment, anyone leaving the store's location "would come that way to leave".

At 29th & Burlington, the officer observed a two-door, olive-green over light-green 1973 Oldsmobile. The officer testified that this Oldsmobile was the only vehicle, except for his own, anywhere upon the streets in the vicinity. The officer turned his patrol vehicle around and attempted to follow the Oldsmobile, but the latter vehicle increased its speed and then made "a rather abrupt left turn on Armour Road". When

this occurred, the officer gave chase and the two vehicles traveled east on Armour when the Oldsmobile turned abruptly south onto Swift Avenue. The officer continued the pursuit, with his vehicle reaching 60 m. p. h. at times. The Oldsmobile continued south on Swift Avenue to 18th Street, then turned back to the east on 18th Street, proceeded east to Iron Avenue, at which point the street came to a dead end. The front right tire of the Oldsmobile struck the curbing and the tire burst. The Oldsmobile skidded to a stop in an adjacent vacant lot.

As the officer brought his patrol vehicle to a stop, he observed appellant exit the Oldsmobile from the passenger side of the Oldsmobile, then stop and reach back inside the Oldsmobile and pick up a pistol. Appellant then ran south into the vacant lot. The officer approached the Oldsmobile and apprehended the driver, who had never exited the vehicle. The third occupant was observed running from the Oldsmobile to the corner of a fence and then proceed south. This third occupant was quickly apprehended by other police officers, who had arrived on the scene.

The officer in original pursuit was joined by the other officers, one of whom located appellant lying on his stomach atop what was variously described as a "rock pile", "concrete pile" or "slag pile". When located and arrested, the officer discovered an unopened package of Kool cigarettes, a ten dollar bill and an amount of change (consisting of 25 nickels, 36 quarters, 26 dimes, two half-dollars and a silver dollar) beneath appellant's body. A subsequent search in the area of appellant's arrest revealed the pistol that appellant had been observed retrieving from the abandoned Oldsmobile. A search of the Oldsmobile resulted in the discovery of an inventoried list of items which included a brown paper bag containing $69.00 in currency, a gallon of milk and a box of cereal. The currency consisted of two five-dollar bills and fifty-nine one-dollar bills.

The clerk testified that the currency and change was "about the amount of money stolen". The clerk also testified that the

Kool cigarettes bore the tax stamp for cigarettes sold in the store. She also testified about the loss of a silver dollar in the robbery and specifically recalled, "Okay, the reason I know is that night I had taken a silver dollar. And rarely did I ever get silver dollars in my store and there's one right there".

The pistol which was found was a single shot pellet gun. The clerk positively identified the pistol as the one used in the robbery, "Because the gun I saw had the black chipped off just like that one".

The clerk identified appellant and the two other men in a police lineup as having been the men in the store.

The state rested its case and appellant offered no evidence. The jury returned its verdict, appellant filed his motion for new trial and a hearing was held upon the motion. The motion was overruled. Following allocution, the court sentenced appellant to ten years in the Department of Corrections. This appeal followed.

In his first two points, appellant argues that the evidence fails to show his active participation in the actual robbery. Appellant bases his conclusion upon the testimony of the clerk, who testified that appellant did nothing in the way of robbing her, that he walked into the store, made a purchase and departed the store on foot without making conversation with the other two men or committing any overt act toward the perpetration of the robbery. Appellant further argues that there is no evidence of any activity by appellant prior to the robbery, or during its actual commission, and that even if an inference can be drawn that appellant threw away the gun after the vehicle chase, it would merely result in speculation by the jury that appellant had something to do with aiding or encouraging the robbery and could only "leave a question hanging in the air as to what he did and when it was done".

■ The evidence in this case is, of course, circumstantial, and the guiding principle in such cases is that such facts in evidence relied upon to establish guilt must be consistent with each other and inconsistent with any reasonable theory of the innocence of the accused, see *State v. Maxie*, 513 S.W.2d 338 (Mo.1974), cert. denied 420 U.S. 930, 95 S.Ct. 1132, 43 L.Ed.2d 40 (1975), and *State v. Ramsey*, 368 S.W.2d 413 (Mo. 1963); but this rule is "realistically tempered in its application since 'in a case involving circumstantial evidence the circumstances need not be absolutely conclusive of guilt, and they need not demonstrate impossibility of innocence . . . the mere existence of other possible hypothesis is not enough to remove the case from the jury'," *State v. Franco*, 544 S.W.2d 533, 534 (Mo.banc 1976), cert. denied 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977); see also *State v. Lumsden*, 589 S.W.2d 226, 227 (Mo. banc 1979) and *State v. Morgan, supra.*

The evidence in this record clearly suffices to serve the rule regarding circumstantial evidence. The record shows appellant to have been at the robbery scene minutes before the actual commission thereof. He purchased milk and cereal at the scene of the robbery. He was later observed retrieving from the vehicle, which had been pursued by the police, the weapon identified in the robbery. When apprehended, appellant was lying upon his stomach with currency and coins under his body. He had been an occupant of a vehicle with two other males who were positively identified as the perpetrators of the actual physical robbery. A subsequent search of the abandoned vehicle resulted in the recovery of a brown paper bag containing currency, a gallon of milk and a box of cereal.

■ The evidence herein clearly reveals facts and circumstances consistent with appellant's guilt and inconsistent with any reasonable theory of his innocence.

■ Appellant argues that since there was no evidence associating him with the actual robbery and that the state's only eye witness testified to the effect that appellant did nothing toward robbing her, there is insufficient evidence to sustain his conviction. A conviction cannot stand unless it can be shown that the accused associated himself with the crime in some fashion and

took some affirmative action, see *State v. Ingram*, 568 S.W.2d 562 (Mo.App.1978) or that it can be shown the accused participated in the crime in some manner as something he wished to bring about, or to make the offense succeed, see *State v. Jackson*, 519 S.W.2d 551 (Mo.App.1975). However, any evidence which fairly shows any active or affirmative participation in the crime is sufficient to sustain a conviction therefor, see *State v. Arnold*, 566 S.W.2d 185 (Mo. banc 1978); *State v. Easton*, 577 S.W.2d 9,3 (Mo.App.1979); and *State v. Rollie, supra*. As was pointed out in *State v. Arnold, supra* at 187, "It is not necessary that he, personally, have done all the things which together make up the elements of the crime".

■ The mere presence of an accused at the scene of a crime, even if coupled with the opportunity to have committed it, will not sustain a conviction, see *State v. Arnold, supra* ; nor will presence at the scene and flight from the scene alone sustain a conviction, see *State v. Arnold, supra*, and *State v. Castaldi*, 386 S.W.2d 392 (Mo.1965). Presence of an accused is a factor to be considered in determining an accused's culpability, see *State v. Burnley*, 480 S.W.2d 881 (Mo.1972); *State v. Riley*, 536 S.W.2d 501 (Mo.App.1976). Also, while flight from the scene, standing alone, is insufficient to sustain a conviction, it is "also a circumstance indicating guilt", see *State v. Woolford*, 545 S.W.2d 367 (Mo.App.1976); *State v. Burnley*, and *State v. Riley, supra*.

■ The presence of an accused at the scene, coupled with other evidence, will sustain a conviction, see *State v. Garrett*, 566 S.W.2d 516 (Mo.App.1978), and *State v. Minor*, 531 S.W.2d 101 (Mo.App.1975). Participation may be inferred and the evidence need not directly reflect the accused in the act of committing the crime with which he is charged, see *State v. Arnold, supra, State v. Buffington*, 588 S.W.2d 512 (Mo.App. 1979), and *State v. May*, 587 S.W.2d 331 (Mo.App.1979). Such inference may be drawn from the presence of the accused, conduct before and after the offense, and companionship before and after the offense, see *State v. Arnold, State v. Buffington*, and *State v. May, supra*.

■ Because of the facts and circumstances of the instant case, there is another rule which finds application herein. That rule provides that all persons who act with a common intent and purpose in the commission of a crime are equally guilty. That rule rings true even if they are not actually and personally present at the commission of the criminal act, see *State v. Lee*, 404 S.W.2d 740 (Mo.1966); *State v. Jackson*, 519 S.W.2d 551 (Mo.App.1975); and *State v. Rollie, supra*.

It is unnecessary to restate all of the facts herein, it is sufficient to mention just those that bring appellant within the rule of active participation. Appellant, as the record shows, had been at the scene. He made purchase of two specific items which were recovered from a vehicle occupied by appellant and two other males identified as having committed the physical act of robbery. The specific items were in a brown paper bag accompanied by currency identified as part of the loot from the robbery. Appellant was observed pausing, in his flight from the abandoned vehicle, to retrieve a pistol positively identified as the one used in the robbery. When apprehended, under his body was other monies, which when combined with the monies from the abandoned vehicle, approximated the total sum taken in the robbery. The pistol was found by investigating officers in the area of appellant's arrest.

■ The evidence in this case illustrates more than mere presence at the scene of the robbery and no direct physical participation in the actual act, as contended by appellant. The evidence shows appellant's presence at the scene and subsequent flight, which can be considered as evidence of consciousness of guilt, *State v. Burnley, supra*. The evidence also shows that when apprehended, appellant was in possession of part of the proceeds of the robbery, and that the items he purchased at the scene were within a paper bag in the vehicle he had just abandoned, accompanied by addi-

tional proceeds from the robbery. Such unexplained possession of the proceeds of a criminal act tends to show guilt, see *State v. Lang*, 536 S.W.2d 52 (Mo.App.1976); *State v. Riley, supra* ; and *State v. Brame*, 542 S.W.2d 591 (Mo.App.1976). The evidence further shows that appellant attempted to dispose of the weapon used in the robbery, and such attempt to dispose of or conceal the weapon is a factor to be considered, see *State v. Cooper*, 541 S.W.2d 40 (Mo.App.1976), and *State v. Thornton*, 532 S.W.2d 37 (Mo.App.1975). The evidence shows appellant's flight and attempt to conceal himself, which are factors to be considered as showing consciousness of guilt, see *State v. Hamilton*, 569 S.W.2d 24 (Mo.App.1978), and *State v. Sterling*, 534 S.W.2d 76 (Mo.App.1976).

■ Under the evidence herein and the authority cited relative thereto, it cannot be concluded, as appellant desires, that the evidence was not substantial so as to sustain appellant's conviction or that the trial court erred in overruling appellant's motion for acquittal. The evidence was substantial to support appellant's conviction.

Point one is ruled against appellant.

■ Turning to point two raised by appellant, the challenged instruction is set forth as follows:

"*INSTRUCTION NO. 5, MAI–CR 2.12, 7.60 given by the Court* :

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about Decmeber (sic) 12, 1978, in the County of Clay, State of Missouri, Patricia Curtis was in charge of money owned by Southland Corporation d/b/a 7–11 Store, and

Second, that at that time and place certain persons took the property from Patricia Curtis against her will by causing her to fear immediate injury to her person, and

Third, that certain persons took the property with the intent to permanently deprive Patricia Curtis of the property and to convert it or any part of it to the use of the defendant and others, and

Fourth, that the defendant acted either alone or knowingly and with common purpose together with others in the conduct referred to in the above paragraphs,

Then you will find the defendant guilty of robbery in the first degree.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, you must find the defendant not guilty of that offense.

If you do find the defendant guilty of robbery in the first degree, you will fix his punishment at imprisonment by the Department of Corrections for a term fixed by you, but not less than five years nor more than life imprisonment."

This instruction was in proper format pursuant to MAI–CR 2.12 and MAI–CR 7.60.

A restatement of the evidence is unnecessary since reference thereto has been made in addressing appellant's point one above. This court finds the evidence sufficient to support the giving of instruction no. 5.

Point two is ruled against appellant.

In his final point, appellant continues his attack upon the court's instructions. Appellant contends that the trial court erred in failing to give a proper MAI–CR 2.14 instruction in conjunction with instruction no. 6 submitted to the jury. Instruction no. 6 was MAI–CR 2.10.

Appellant's argument on this point is premised upon the theory that there was substantial evidence by the state that appellant was *not* a joint active participant in the actual crime of robbery. Appellant carries his argument further, contending that by the failure to include the MAI–CR 2.14 instruction, no guide was afforded the jury whereby the trier of fact could properly apply the principles within instruction no. 6 to the facts of the case. Appellant emphasizes especially those facts relative to the issue of whether appellant was an aider or encourager in the robbery.

The court submitted instruction no. 6, which reads as follows:

"INSTRUCTION NO. 6, MAI–CR 2.10, given by the Court:

All persons are guilty who knowingly act together with the common purpose of committing an offense, or who, whether present or not, knowingly and intentionally aid or encourage another in committing it, and whatever one does in furtherance of the offense is the act of each of them.

The presence of a person at or near the scene of an offense at the time it was committed is alone not sufficient to make him responsible therefor, although his presence may be considered together with all of the evidence in determining his guilt or innocence."

MAI–CR 2.14, which appellant contends should have been given, reads as follows:

"(As to Count _____, if) (If) you find and believe from the evidence beyond a reasonable doubt:

First, that (on) (On or about) _____ in the (City) (County) of _____, State of Missouri, *continue in this and other paragraphs to submit all essential elements of the offense or the attempt to commit it. Where appropriate in ascribing certain conduct to defendant or another or others whom he aided or tried to aid, use the word or phrase applicable to describe the person or persons who engaged in that conduct, e. g. "defendant", or the name of other or others, or "a certain person", or "certain persons", or "defendant or another", or "defendant or others", or "defendant and another" or "defendant and others",* and (Second) (Third) *last numbered paragraph,* that the defendant knowingly and intentionally aided or encouraged the (person) (persons) who engaged in the conduct submitted in the above paragraphs,

then you will find the defendant guilty (Under Count _____ of _____)."

The evidence on the record, as has been pointed out, is sufficient to sustain appellant's conviction as an active participant in the robbery. Appellant, under his final point, insists at best his role could only have been as an aider or abettor and hence,

MAI–CR 2.14 should have been given. Appellant's interpretation of the evidence is not correct.

The court, in submitting MAI–CR 2.10 was correct. Under the evidence, MAI–CR 2.10 or MAI–CR 2.14 could have been used as the evidence supports appellant's role, either as an active participant or an aider and abettor, and the choice in submitting MAI–CR 2.10 was not error.

It should be pointed out that in addition to instructions no. 5 and no. 6 above, the court submitted instruction no. 7 which reads as follows:

"INSTRUCTION NO. 7, MAI–CR 3.06, given by the Court:

If you do not find and believe from the evidence beyond a reasonable doubt each and all of the following:

First, that at the time and place of the robbery, the defendant knew of the unlawful purpose of the persons who actually took the property from Patricia Curtis against her will by causing her to fear immediate injury to her person, and

Second, that at the time and place of the commission of the aforesaid robbery, the defendant knowingly and with common purpose acted together with others in the commission of said robbery,

Then you must find the defendant not guilty."

■ When courts are asked to review jury instructions for error, the court will review all of the instructions together to determine if the rights of an accused have been prejudiced by the failure to submit a particular instruction or if there be prejudicial error in the submission of a particular instruction, see *State v. Holt,* 592 S.W.2d 759 (Mo.banc 1980); *State v. Vainikos,* 366 S.W.2d 423 (Mo.banc 1963); and *State v. Hines,* 581 S.W.2d 109 (Mo.App.1979).

■ If, as appellant contends, the evidence had shown appellant only to have been an aider or abettor, then his argument requiring MAI–CR 2.14 would have merit,

but the evidence supports the theory of his role as an active participant, see *State v. Champion*, 560 S.W.2d 903 (Mo.App.1978), see also Notes on Use, MAI–CR 2.10.

When the evidence of this case is viewed in its entirety and the instructions are viewed together, see *State v. Holt, supra,* there was no error in submitting MAI–CR 2.10.

Point three is ruled against appellant.

The judgment herein is, for the foregoing reasons, in all respects affirmed.

All concur.