**STATE of Missouri, Respondent,**

v.

**Harold D. STUFFLEBEAN, Jr., Appellant.**

**No. WD 31256.**

Missouri Court of Appeals, Western District.

Aug. 4, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 2, 1980.

Application to Transfer Denied Oct. 15, 1980.

John L. Woodward, Steelville, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Earl W. Brown, III, Asst. Atty. Gen., Kansas City, for respondent.

Before CLARK, P. J., and DIXON and SOMERVILLE, JJ.

CLARK, Presiding Judge.

Harold D. Stufflebean, Jr. was found guilty after trial by a jury of the offense of stealing property of a value in excess of $50.00, § 560.156, RSMo 1969. As a second offender, he was sentenced by the court to a term of eight years. He now prosecutes this appeal from the judgment so rendered.

Stufflebean raises five points on this appeal and interlaces the points with argument that the state's evidence was insufficient to identify him as a participant in the scheme to defraud the victim. Before addressing each of appellant's points on specific claims of error, it is first necessary to recount the evidence and treat its sufficiency to support the conviction.

The victim was seventy–nine year old Lillian Bruce, a resident of Boonville. On August 30, 1977, two men, later identified as Golder Copas and Delbert Miller, called at Mrs. Bruce's home for the purpose of fraudulently inducing her to pay them for exterminating non–existent wood beetles. Copas was known to Mrs. Bruce because he had previously treated her house for termites. Copas' companion was introduced, according to Mrs. Bruce, as a "government man" there to make an inspection.

After a perfunctory investigation, Miller informed Mrs. Bruce that beetles were indeed at work damaging the structure. Negotiations resulted in agreement that the price paid for ridding the house of the pests

would be $620.00. A spurious fogging device was used to convey the impression of insect spray and the men departed with Mrs. Bruce's check drawn on her account in Jamestown. By Copas' direction, the check was made payable to Harold D. Stufflebean.

During the events inside the Bruce residence, Stufflebean remained outside in the truck which had brought the men to the Bruce home. After the check had been obtained, the three drove immediately to Jamestown where Stufflebean identified himself at Mrs. Bruce's bank and cashed the check. A telephone call by Mrs. Bruce to the bank that afternoon came too late to stop payment on the check.

As to the foregoing events, witnesses other than Mrs. Bruce were generally in agreement. Copas, a witness for the state, also testified in substance that Stufflebean, who apparently had a state license as an exterminator, was an active participant in the scheme and functioned as a conduit for the funds. Miller, testifying on Stufflebean's behalf, admitted that he and Copas had devised the plan to cheat Mrs. Bruce but he denied that either he or Copas disclosed their intention to Stufflebean. It was Miller's evidence that Stufflebean had been enlisted to front in cashing the check and that his cooperation had been obtained on the pretext that his services would be needed to maintain a five–year guarantee given Mrs. Bruce against future insect infestation.

■ Stufflebean did not testify. Mrs. Bruce's evidence was that the man who accompanied Copas was introduced to her as Stufflebean. She identified appellant as that man. In this detail, Mrs. Bruce was quite apparently mistaken because all other witnesses agreed that it was Miller who entered the house, albeit under the identity of Stufflebean. Much of appellant's argument centers on the competency of Mrs. Bruce as a witness, it being his assertion that misidentification of him by Mrs. Bruce requires the conclusion that his conviction is not supported by substantial evidence. Identification of appellant, however, was

never an issue because he, beyond question, was one of the three men involved and it was he who cashed Mrs. Bruce's check. The defense which appellant's evidence raised was that he was not a co–participant with Copas and Miller in the fraud but was an unwitting dupe. The jury by its verdict rejected that defense and there was ample evidence to support that result.

Turning to appellant's points as more specifically recited, he first argues under two related points that the charge against him should have been dismissed or that he is entitled to a new trial because it was error to permit Mrs. Bruce to identify him as one of the two men who entered her home and fraudulently represented to her that insect extermination services were needed. He bases these points on a contention that he was denied a due process right to suppression of identification evidence generated by impermissible, suggestive pre–trial confrontation.

According to appellant, identification of him by Mrs. Bruce first occurred at a preliminary hearing, presumably before an associate circuit judge. This he says was an identification suggested to the witness because appellant was seated at the counsel table and he was dressed in different attire from the attorneys, the only other persons present. He also complains that this misidentification by Mrs. Bruce was anticipated and he had accordingly requested a line–up before the preliminary hearing to test the grounds for his detention but the request was denied. The prejudice was compounded, he asserts, when Mrs. Bruce subsequently at trial referred to Stufflebean as the "government man" who was in her house with Copas.

Appellant's contention is somewhat obscure but to the extent it was articulated at trial, it appears in a motion in limine and in subsequent motions after the evidence was heard and after verdict. As we perceive the argument, it is that refusal of Stufflebean's request for a line–up to test Mrs. Bruce's recognition of him and the suggestive circumstances of the in–court identification at the preliminary hearing either en-

titled Stufflebean to dismissal of the case on constitutional due process grounds or so tainted the evidence to be adduced at trial by Mrs. Bruce that she was incompetent as a witness for any purpose.

■ At the outset, we are confronted with an obstacle to a review of appellant's contentions regarding proceedings at the preliminary hearing because no record was made in the associate circuit court. The absence of such a record is neither unusual nor an unauthorized decrement because evidence taken at preliminary hearings on felony complaints is not required to be reported except in cases of homicide. § 544.370, RSMo 1978. Setting aside, however, the absence of a record to substantiate Stufflebean's argument, yet there would be no case for appellate review even assuming that he requested and was denied a pre-hearing line-up and assuming that Mrs. Bruce's identification lacked any independent basis. This court has no authority to review the preliminary hearing in a criminal case conducted in the associate circuit court except upon limited grounds challenging the integrity of the court which conducted the hearing.

"The magistrate is the sole judge of the competency of evidence offered in the hearing before him and the weight to be given it, and, in the absence of fraud or purely arbitrary or malicious action by the justice, his finding is conclusive and cannot be reviewed by any other court." *State v. Admire*, 495 S.W.2d 132 (Mo.App. 1973), quoting from *Ex parte Cloud*, 18 S.W.2d 562 l.c. 563 (Mo.App.1929).

The rule which denies to the defendant charged with a felony the opportunity to seek review of proceedings binding him over for trial is based upon and recognizes that the preliminary hearing is not a trial and adjudicates neither guilt nor innocence. The decision only ascertains whether probable cause has been shown to persuade that a felony has been committed and that the accused was the offender. Right or wrong, the decision of the judge to hold the accused for trial binds the proceeding on this issue and is conclusive. *State v. Clark*, 546 S.W.2d 455, 462 (Mo.App.1977). To the extent that Stufflebean's motions sought pre-trial and post-trial relief by reason of alleged errors in the conduct of the preliminary hearing, the trial court was correct in overruling the motions because they sought a review which is not available.

■ The second prong of Stufflebean's contention is that by reason of events previously described as attendant upon the preliminary hearing, he was entitled to suppression of identification testimony at trial by Mrs. Bruce because a fair pre-trial confrontation was not provided. In his third and related point, appellant extends this argument by asserting that misidentification of him by Mrs. Bruce demonstrated her lack of competency as a witness for any purpose and the failure of the trial court to strike her evidence in accordance with appellant's motion deprived him of his right to be tried on competent evidence.

As was noted above in discussing the sufficiency of the evidence to support the conviction, it is apparent Mrs. Bruce's testimony was important to establish the representations made to her as to a need for insect extermination, but the identification of appellant as one of those who were in her home and falsely described the hazard from the fictional wood beetles was irrelevant and immaterial to the state's case. The introduction of Miller as "Stufflebean, the government man" was no doubt a ruse employed to facilitate the plan that Stufflebean's name be used as the payee of the check to be procured from Mrs. Bruce. In the mind of the seventy-nine year old victim, it is scarcely surprising that the identity of the men was less than clear. For the prosecution, however, identification evidence from Mrs. Bruce was not only unnecessary, it was in conflict with the state's case which placed Stufflebean outside in the truck and assumed that he was never seen by the victim.

In the pre-trial conference in chambers, the prosecutor candidly acknowledged that Mrs. Bruce had mistakenly identified appellant as one of the two men who entered her house and responding to appellant's motion

to suppress such identification evidence, the prosecutor disclaimed any intention to seek identification of Stufflebean by Mrs. Bruce. Not only was such evidence unnecessary to proof of the state's case, but the testimony to this effect by Mrs. Bruce would reflect unfavorably on the critical testimony of Copas who placed Stufflebean outside in the truck throughout.

The difficulty with appellant's argument as to suppression of identification testimony by Mrs. Bruce is that the motion was confessed and the state elicited no identification of appellant from Mrs. Bruce during her direct examination. She did testify that Copas' companion was "Stufflebean, the government man," but she made no in-court identification of appellant on direct examination and, in accordance with the pre-trial agreement by the state, Mrs. Bruce was not asked to place appellant at the scene. It was only on cross-examination when pressed by appellant's counsel for particulars as to who the men were in her home that Mrs. Bruce pointed to appellant as one of those men, the one she knew as Stufflebean. Whatever may be the merits of appellant's contention that suggestive pre-trial confrontation with Mrs. Bruce tainted any identification evidence from her, he is not in a position to assert trial error on this account because it was appellant who introduced that evidence. *State v. Gomillia*, 529 S.W.2d 892, 900 (Mo.App. 1975).

■■ As to appellant's contention that because Mrs. Bruce was shown to have been mistaken when she identified him at the preliminary hearing and later at trial, she was thereby rendered incompetent to testify regarding any fact, the argument would only have merit were some showing to have been made that Mrs. Bruce was of unsound mind. Not only was there no evidence that Mrs. Bruce was suffering at the time of trial from any mental impairment or that she had ever been treated or confined for mental illness, her testimony itself demonstrates that she was alert, aware and possessed of normal faculties. Absent prior adjudication of the witness as insane or a

record of confinement in a mental institution, the burden of showing the witness to be of unsound mind and incompetent to testify is upon the one who seeks to exclude the witness's testimony on that ground. *State v. McCarty*, 460 S.W.2d 630, 637 (Mo. 1970). The record here, limited to the single instance of mistaken identification of appellant by Mrs. Bruce, falls far short of proving her incompetent to testify. The trial court correctly ruled that appellant's motion to exclude Mrs. Bruce's evidence was without merit.

■ In his fourth point, appellant complains further regarding Mrs. Bruce's testimony and argues that she should not have been permitted to say that Copas introduced his companion as Stufflebean. This he contends was error because the statement was hearsay.

The circumstances under which Copas made the statement to Mrs. Bruce have already been described. Copas and Miller, for reasons important to their scheme, wanted to use Stufflebean's name so that the check ultimately received could be cashed, but they also wished to confuse identification of which person was, in fact, Stufflebean. Under the state's evidence, appellant's participation in the fraud included the use of his name and it is reasonable also to assume that he was aware Copas and Miller would in some way explain to Mrs. Bruce the connection of the payee named on the check with the extermination service. Thus, evidence from Mrs. Bruce that Miller was introduced to her as Stufflebean was not offered to prove the fact stated but, to the contrary, the statement was offered to prove a false identity assumed by Miller in the course of perpetrating the fraud. The essence of the evidence was that the statement was made.

■ If the fact that a statement has been made is relevant to a material issue in the case and it is immaterial that the statement be true or false, the hearsay rule does not apply and the statement may be shown. *Miller v. Brunson Const. Co.*, 250 S.W.2d 958, 962 (Mo.1952); *Rinker v. Ford Motor Co.*, 567 S.W.2d 655, 663 (Mo.App.1978);

*State v. Herington*, 520 S.W.2d 697, 700 (Mo.App.1975). The testimony by Mrs. Bruce as to the man introduced as Stufflebean was relevant and admissible on this ground and the point is ruled against appellant.

Finally, appellant questions the sufficiency of the evidence to convict him, particularly contending that the testimony of Mrs. Bruce was discredited by her mistaken identification of him and that the testimony of Copas was unworthy of belief because he had previous felony convictions and had been promised leniency in exchange for his cooperation. No suggestion is made that Copas on this account was induced to testify falsely, only that his record and a desire to be of aid to the state cast doubt on his truthfulness.

The thrust of Stufflebean's argument, which has previously been examined on the general ground of sufficiency of the evidence to support the verdict, is that the jury was not entitled to believe the testimony of Mrs. Bruce and Copas. This contention, however, involves the credibility of these witnesses and the weight and value to be given their testimony. Such matters are not a subject open to review on appeal but are finally resolved by the finder of fact. *State v. Denmon*, 570 S.W.2d 326, 327 (Mo. App.1978). The jury here quite apparently believed the testimony of Mrs. Bruce and Copas and it was enough to sustain the verdict.

The judgment is affirmed.

All concur.